# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

SAMBONET PADERNO INDUSTRIE, S.P.A., et al.,

    Plaintiffs,

v.

SUR LA TABLE, INC., a Washington corporation,

    Defendant.

Case No. CV 14-9473 FMO (RZx)

**ORDER Re: DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

    Having reviewed all the briefing filed with respect to defendant Sur La Table, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6) ("Motion"), the court concludes that oral argument is not necessary to resolve the Motion. See Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001).

## INTRODUCTION

    On December 10, 2014, plaintiffs Sambonet Paderno Industrie, S.P.A. ("Sambonet") and Rosenthal Sambonet USA, Ltd. ("Paderno") (collectively, "plaintiffs") filed this action against Sur La Table, Inc. ("Sur La Table" or "defendant"), seeking a preliminary and permanent injunction, compensatory and punitive damages, restitution, costs, and attorney's fees for defendant's alleged violations of the Lanham Act for trade dress infringement and false designation of origin, 15 U.S.C. 1125(a), common law unfair competition, and statutory unfair competition, Cal. Bus. & Prof. Code §§ 17200 et seq. (See Complaint at ¶¶ 15-46 & Prayer for Relief). On April 10, 2015, defendant moved to dismiss the case pursuant to Rule 12(b)(6). (See Motion to Dismiss Plaintiff's Complaint

Pursuant to Rule 12(b)(6)). On May 11, 2015, the court granted defendant's motion and dismissed the Complaint with leave to amend. (See Court's Order of May 11, 2015 at 2). Plaintiffs then filed their First Amended Complaint ("FAC"), requesting the same remedies for the same causes of action as were pled in the Complaint. (See FAC at ¶¶ 18-49 & Prayer for Relief). Defendant subsequently filed the instant Motion.

## PLAINTIFF'S ALLEGATIONS

Sambonet "manufactures and markets various kitchen products worldwide[,]" one of which is known as the Spiral Vegetable Slicer ("Spiral Slicer"). (See FAC at ¶ 9). Paderno "is the exclusive licensee of all rights, including intellectual property rights, to Sambonet's products in the United States." (Id. at ¶ 12). Together, plaintiffs allege that "[t]he design, color, and shape, as well as the overall appearance of the Spiral Slicer (its 'trade dress') are distinctive and non-functional." (Id. at ¶ 9). Because of Paderno's extensive sales and advertising, plaintiffs claim that "in the minds of consumers, the distinctive trade dress of that product has come to symbolize the source and quality of the product . . . [and] has thus become, and is, a valuable asset of plaintiffs' business, symbolizing its high quality goods and its good will." (Id. at ¶¶ 14 & 15).

Plaintiffs claim that defendant has "design[ed], manufactur[ed], market[ed], and/or [sold], without the permission or knowledge of plaintiffs, cheap imitations of the Spiral Slicer." (FAC at ¶ 16). They allege that defendants have designed the product such that "consumers are likely to be, and in fact have been, confused as to the source of defendants' goods and have bought those goods on the assumption that they were manufactured or distributed by plaintiffs or affiliated in some way with plaintiffs." (Id. at ¶ 17).

## LEGAL STANDARD

A motion to dismiss for failure to state a claim should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly (Twombly), 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007); see Ashcroft v. Iqbal (Iqbal), 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009); Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S.

at 678, 129 S.Ct. at 1949; see Cook, 637 F.3d at 1004; Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010). The plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. at 1965; Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; see also Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004), cert. denied, 544 U.S. 974 (2005) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and internal quotation marks omitted). "Specific facts are not necessary; the [complaint] need only give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (per curiam) (citations and internal quotation marks omitted); see Twombly, 550 U.S. at 555, 127 S.Ct. at 1964.

In considering whether to dismiss a complaint, the court must accept the allegations of the complaint as true, Erickson, 551 U.S. at 93-94, 127 S.Ct. at 2200; Albright v. Oliver, 510 U.S. 266, 268, 114 S.Ct. 807, 810 (1994), construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). Dismissal for failure to state a claim can be warranted based on either a lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory. See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint may be dismissed also for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim. See Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

## DISCUSSION

Defendant asserts in its Motion that plaintiffs have not pled a plausible claim for trade dress protection under 15 U.S.C. § 1125(a) ("Lanham Act") (see Motion at 6-10), that plaintiffs' false designation of origin claim under the Lanham Act fails as a matter of law (see Motion at 10-11), and that because plaintiffs' "claims for common law and California unfair competition are

predicated on [plaintiffs'] Lanham Act claims[,]" they should also be dismissed. (See Motion at 11-12). The court considers each of these arguments in turn.

I.    TRADE DRESS INFRINGEMENT.

To state a claim for trade dress infringement under the Lanham Act, a plaintiff must allege "(1) that its claimed trade dress is nonfunctional; (2) that its claimed trade dress serves a source-identifying role either because it is inherently distinctive or has acquired secondary meaning; and (3) that the defendant's product or service creates a likelihood of consumer confusion." Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1258 (9th Cir. 2001) (footnote omitted). Although defendant asserts that "[s]everal of [the required] elements are absent in this case," its Motion focuses on plaintiffs' alleged failure to plead non-functionality. (See Motion at 6). Defendant claims that plaintiffs have not satisfied their pleading burden "because [their] purported 'trade dress' consists entirely of product features that are present for their utility, not for their source-identifying design. Indeed, every aspect of Sambonet's vegetable slicer serves at least 'some' useful function." (Id. at 6-7).

Plaintiffs counter that defendant has attempted to turn a motion to dismiss into a challenge of the merits of plaintiffs' claims. (See Opposition to Defendant Sur La Table, Inc.'s Motion to Dismiss First Amended Complaint Pursuant to Rule 12(b)(6) ("Opp.") at 1). They assert that "[t]his is because, according to Sur La Table, Sambonet's Spiral Slicer is functional as a matter of law. But functionality is a fact question, and the cases on which Sur La Table relies were decided either at the summary judgment stage, or after trial, after discovery had been taken, facts had been marshalled and presented and, on occasion, experts had rendered opinions on the issue." (Id.) (emphases in original) (further asserting that "[t]his is not a summary judgment motion. We are not testing the sufficiency of the evidence. We are simply determining whether Sambonet has sufficiently notified Sur La Table of the claims against it.") (emphasis in original).

The court is persuaded by plaintiffs' argument that a motion to dismiss is not a proper vehicle by which the court should weigh functionality in a trade dress infringement claim. This is because the "functionality analysis . . . is a question of fact[.]" Secalt S.A. v. Wuxi Shenxi Const. Machinery Co., Ltd., 668 F.3d 677, 683 (9th Cir. 2012). In analyzing functionality, a court must

1  consider: "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs
2  are available, (3) whether advertising touts the utilitarian advantages of the design, and (4)
3  whether the particular design results from a comparatively simple or inexpensive method of
4  manufacture." Disc Golf Ass'n, Inc. v. Champion Discs, Inc., 158 F.3d 1002, 1006 (9th Cir. 1998).
5  Because of the detailed multi-factor analysis required, courts have said that "functionality is
6  generally viewed as an intensely factual issue." Surface Supplied, Inc. v. Kirby Morgan Dive
7  Systems, Inc., 2013 WL 6354244, *3 (N.D. Cal. 2013) (quoting Tie Tech, Inc. v. Kinedyne Corp.,
8  296 F.3d 778, 783 (9th Cir. 2002)); see also Calyx Technologies, Inc. v. Ellie Mae, Inc., 2004 WL
9  2075446, *3 (N.D. Cal. 2004) (same).

Under the circumstances, the court is unwilling to entertain defendant's arguments at this stage of the litigation that the trade dress elements identified by plaintiffs are "functional on their face[,]" (see Motion at 8), or that the FAC only describes "product features that are present for their utility," (id at 6). See, e.g., Axis Imex, Inc. v. Sunset Bay Rattan, Inc., 2009 WL 55178, *3 (N.D. Cal. 2009) ("facts going to . . . functionality analysis [could not] be resolved at the motion to dismiss stage" and holding that resolution of the issue would need to "await summary judgment or trial"); Autodesk, Inc. v. Dassault Systems SolidWorks Corp., 2008 WL 6742224, *2 (N.D. Cal. 2008) (noting "[g]enericness and functionality are questions of fact, making dismissal under Rule 12(b)(6) inappropriate"). Plaintiffs may ultimately be unable to prove that the features it alleges as its trade dress are functional. However, "the opposite may be true as well. Construing [plaintiffs'] complaint liberally," the question now is whether its allegations have been sufficiently pled. See Millenium Laboratories, Inc. v. Ameritox, Ltd., 2012 WL 4863781, *4 (S.D. Cal. 2012) ("Although [plaintiff] may have great difficulty proving that the features it alleges as its trade dress could be denied to other competitors without putting them at a non-reputation-related disadvantage, the question of functionality is a factual one that cannot be resolved on a motion to dismiss.").

Given that the court will not resolve the functionality question at this stage, it need only assess whether the functionality allegations have been pled sufficiently. In answering this question, the court applies regular pleading standards under Federal Rule of Civil Procedure 8.

5

See Kano Laboratories, Inc. v. Clenair Mfg., Inc., 2013 WL 5759651, *3 (M.D. Tenn. 2013) ("Although a trade dress's nonfunctional nature must be proven by the party asserting the trade dress protection, there is no heightened pleading standard for this element of [p]laintiff's claim.") (emphasis in original). Thus, taking plaintiffs' allegations as true, the question is whether plaintiffs have pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949. The FAC "need only give the defendant fair notice of what the . . . claim is and the grounds upon which is rests." Erickson, 551 U.S. at 93, 127 S.Ct. at 2200 (internal quotations marks omitted).

Here, plaintiffs have alleged their trade dress infringement claim, and specifically their non-functionality claim, in considerable detail:

> [T]he following combination of features and design elements is distinctive and non-functional: a rectangular unit approximately 11-1/2 inches long, 6-1/8 inches deep, and 8-1/2 inches high, made of monochromatic, unadorned, unlabeled, off-white plastic, and consisting of, inter alia, four one-inch in diameter cylindrical (as opposed to rectangular, triangular, oval, or flared, for example) legs (there is no need to have legs at all; one could have a box with suction cups on the bottom), two of which have bumps on top, a horizontal slider to which is affixed a disk-shaped vegetable/fruit holder with a decoratively flared (as opposed to one of even thickness, for example) cylindrical crank handle approximately two inches (as opposed to three inches, for example) in length and of two different thicknesses (as opposed to one uniform thickness), as well as a decoratively flared (as opposed to straight, for example) cylindrical guide handle approximately 2-3/4 inches long, and a vertical frame into which is inserted one of three rectangular blade housings measuring approximately 4-1/2 inches by 4-3/4 inches, with decoratively curved dome-shaped handles.

6

(FAC at ¶ 10). This level of detail and information[1] adequately puts defendant on notice of the elements of plaintiffs' Spiral Slicer that are arguably non-functional. Indeed, complaints containing less detail than plaintiffs' FAC have been found sufficient in other cases. See, e.g., Kano Laboratories, 2013 WL 5758651 at *3 (finding a complaint sufficient where plaintiff, after describing the elements of its trade dress, "allege[d] that none of these trade dress features is essential to the use or performance" of the item in question); Calyx, 2004 WL 2075446 at *3 ("[P]laintiff has met its requirement by alleging that a distinctive visual image has been created by its product and identifying the various unique [components] and the elements that combine to form the unique images. This is sufficient given the liberal pleading rules and the factual nature of this issue."); see also General Motors Corp. v. Lanard Toys, Inc., 468 F.3d 405, 414 (6th Cir. 2006), cert. denied, 552 U.S. 819 (2007) ("we are looking to avoid vague and indeterminate references to the overall appearance or look of plaintiff's packaging[;]" instead, the parties must be able to "coherently define exactly what the alleged trade dress consists of" in order to determine whether it is valid.) (internal quotation marks and citation omitted).

II. FALSE DESIGNATION OF ORIGIN.

Plaintiffs' second claim for relief is for false designation of origin under the Lanham Act.

---

[1] Considering the details provided in the FAC, the court is unpersuaded by defendant's assertions that plaintiffs' allegations that the Spiral Slicer's features are non-functional are "conclusory[,]" are simply "magic words[,]" or that they are "naked assertions devoid of further factual enhancement." (See Motion at 7 & 9) (internal quotations omitted). Further, defendant's characterization of plaintiffs' pleading as having failed to "allege any facts as to how the vegetable slicer trade dress meets the legal requirement of non-functionality," (see Defendant's Reply In Support of Motion to Dismiss ("Reply") at 2) (emphasis in original), is inaccurate. (See, e.g., FAC at ¶ 10) (including, inter alia, allegations such as "there is no need to have legs at all" and describing the handles as "decoratively curved"). Defendant's reliance on ID7D Co., Ltd. v. Sears Holding Corp., 2012 WL 1247329, *7 (D. Conn. 2012), (see Reply at 5-6), is similarly unavailing, as the court there found that plaintiff failed "to plead in its complaint that any of the specific elements it is claiming trade dress for are non-functional." Instead, it alleged in a conclusory fashion that the product's entire "sculptural configuration and/or other nonfunctional design features" was a protectable trade dress. See id. That is simply not the case here. Furthermore, although the court in ID7D v. Sears concluded that certain elements of the alleged trade dress were "undeniably functional[,]" id. at *7, this court declines to make any conclusions on factual issues until summary judgment or trial. See, e.g., Axis, 2009 WL55178 at *3 ("facts going to . . . functionality analysis [could not] be resolved at the motion to dismiss stage").

(See FAC at ¶¶ 31-37). Defendant asserts that the claim fails as a matter of law because "it is undisputed that Sur La Table is the origin of its own vegetable slicer tool." (Motion at 10) (relying on Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 123 S.Ct. 2041 (2003)). Plaintiffs respond that Dastar was not a trade dress case, and the reasoning in Dastar does not apply to cases such as this one, in which "Sur La Table is misleadingly suggesting to the consuming public that Sambonet, not Sur La Table, is the origin of Sur La Table's inferior spiral slicer, and [in which] consumers have in fact been confused as to its origin, believing it to come from Sambonet." (Opp. at 19).

In Williams v. Cavalli, 2015 WL 1247065 (C.D. Cal. 2015), confronting a similar argument by the defendant, the court summarized the holding of Dastar as follows:

> In Dastar, the defendant copied and edited the plaintiff's video series and sold it under its own name. According to the plaintiff, this constituted reverse passing off because the defendant sold another's work under its own name. Reverse passing off occurs when a producer misrepresents someone else's goods or services as his own. Passing off, on the other hand, occurs when a producer misrepresents his own goods or services as someone else's. Even though the plaintiff alleged reverse passing off, the Court held that the plaintiff could not recover on its Lanham Act claim. . . . Since the plaintiff was the physical producer of the videotapes and labeled the tapes as such, the plaintiff's conduct caused no confusion about the origin of the videotapes. The Court explained that the Lanham Act is not designed to reward innovation, but rather the reduce consumer costs by preventing competitors from copying a source-identifying mark. Thus, after Dastar, a plaintiff cannot succeed in bringing a Lanham Act claim for reverse passing off solely by alleging that a defendant appropriated the plaintiff's communicative content without accreditation.

Id., 2015 WL at *4. In Williams, the court found that Dastar did not bar the plaintiff's claim because plaintiff was claiming that "Defendants sold their own products using [plaintiff's] source-identifying

imagery." Id. at *5. Accordingly, the alleged conduct constituted "passing off, which occurs when a producer sells its own goods while misrepresenting that they were made by another." Id. "Since [plaintiff] allege[d] passing off, rather than reverse passing off, Dastar [did] not preclude [the] Lanham Act claim." Id.

This is precisely the issue here, as this is a "passing off" case related to tangible objects as opposed to a "reverse passing off" case about communicative content. Plaintiffs allege that "the marketing and sale of defendants' products . . . constitute false designation of origin that is likely to cause confusion and mistake and to deceive customers as to the source or origin of defendants' goods and sponsorship or approval of such goods by plaintiffs." (FAC at ¶ 33). In other words, plaintiffs have alleged that by using plaintiff's trade dress, Sur La Table is suggesting to consumers that its product is manufactured not by Sur La table, but by Sambonet. See, e.g., Bretford Mfg., Inc. v. Smith System Mfg. Co., 419 F.3d 576 (7th Cir. 2005) ("The right question, Dastar holds, is whether the consumer knows who has produced the finished product. In the Dastar case that was Dastar itself, even though most of the product's economic value came from elsewhere[.]"). Other circuits have recognized this distinction as well, confirming the inapplicability of Dastar to cases like the instant action. See, e.g., B and F System, Inc. v. LeBlanc, 519 Fed.Appx. 537, 539 (11th Cir. 2013) (contrasting the case before it, in which the defendants "suggest[ed] to customers that [they] were affiliated with, or became the successors of, [plaintiff]" from Dastar, in which "the copied products were not sold by using the plaintiff's trademark."); Through the Door Inc. v. J.C. Penney Co., 2007 WL 2265781, *1-2 (W.D. Wis. 2007) (rejecting defendant's argument that Dastar foreclosed plaintiff's false designation claim, because it was properly based "on the use of the copyrighted material as trade dress to falsely represent that the general merchandise it sells originates with plaintiff.").[2]

---

[2] Defendant's distinguishing these cases from the instant matter is unpersuasive. (See Reply at 15-16). Defendant is correct that in B and F System, plaintiff alleged that defendant was using the plaintiff's trademark to sell the product, see 519 Fed.Appx at 539, and in Through the Door, plaintiff alleged that defendant used its copyrighted material as trade dress to falsely represent that the general merchandise it sells originates with plaintiff. See 2007 WL 2265781 at *2. However, these cases provide helpful guidance not because their facts and claims identically mirror those in this case, but because they demonstrate that courts are not barring false

In sum, in Dastar, and in cases like it, there was no express or implied suggestion that the product in question emanated from anyone other than the entity that produced it. By contrast, in this case, as in the cases cited above, plaintiff alleges that Sur La Table is misleading the public into believing that its kitchen tool was manufactured by Sambonet. For this reason, plaintiffs' claim for false designation of origin under the Lanham Act is not precluded by Dastar, and does not fail as a matter of law.

III. UNFAIR COMPETITION CLAIMS.

Defendant asserts that because plaintiffs' claims for common law and unfair competition "are predicated on Sambonet's Lanham Act claims[,]" they should "therefore be dismissed alongside the Lanham Act claims[.]" (See Motion at 11). However, because the Motion is denied as to both Lanham Act claims, it is also denied as to the common law and unfair competition claims.

## **CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. Defendant's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6) **(Document No. 36)** is **denied.**

2. Defendant shall file its Answer to the First Amended Complaint no later than **July 31, 2015**.

Dated this 23rd day of July, 2015.

/s/
Fernando M. Olguin
United States District Judge

---

designation of origin claims post-Dastar merely because the defendants have unquestionably created – or are the "origin" of – the item at issue. In other words, the fact that plaintiffs have not alleged "any facts that Sur La Table lied about the origin of its products" (see Reply at 17-18) is beside the point. Plaintiffs have alleged that the marketing and sale of defendant's product "constitute false designation of origin that is likely to cause confusion and mistake and to deceive consumers as to the source or origin of defendants' goods and sponsorship or approval of such goods by plaintiffs." (See FAC at ¶ 33). Dastar does not preclude this claim. See, e.g., Williams, 2015 WL 1247065 at *5 (Plaintiff claimed that defendants sold their own products using plaintiff's source-identifying imagery, and the court found that "[s]ince [plaintiff] allege[d] passing off, rather than reverse passing off, Dastar [did] not preclude" the claim.).